**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| BRIAN PRICE, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>VERSUM MATERIALS, INC., GUILLERMO NOVO, JACQUES CROISETIÈRE, SEIFOLLAH GHASEMI, SUSAN C. SCHNABEL, THOMAS J. RIORDAN, DR. YI HYON PAIK, and ALEJANDRO D. WOLFF,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Brian Price ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1. This action is brought as a class action by Plaintiff on behalf of himself and the other public holders of the common stock of Versum Materials, Inc. ("Versum" or the "Company") against the Company and the members of the Company's board of directors (collectively, the "Board" or "Individual Defendants," and, together with Versum, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), SEC Rule 14a-9, 17 C.F.R. 240.14a-9, and Regulation G, 17 C.F.R. § 244.100 in connection with the proposed merger (the "Proposed Merger") between Versum and Entegris, Inc. ("Entegris").

2. On January 27, 2019, the Board caused the Company to enter into an agreement and plan of merger ("Merger Agreement"), pursuant to which the Company's shareholders stand

to receive 1.120 shares of common stock of Entegris for each share of Versum stock they own (the "Merger Consideration"). Upon completion of the merger, Entegris stockholders will own 52.5 percent and Versum Materials stockholders will own 47.5 percent of the combined company.

3. On February 28, 2019, in order to convince Versum shareholders to vote in favor of the Proposed Merger, the Board authorized the filing of a materially incomplete and misleading Form S-4 Registration Statement (the "S-4") with the Securities and Exchange Commission ("SEC"), in violation of Sections 14(a) and 20(a) of the Exchange Act. The materially incomplete and misleading S-4 violates both Regulation G (17 C.F.R. § 244.100) and SEC Rule 14a-9 (17 C.F.R. 240.14a-9), each of which constitutes a violation of Section 14(a) and 20(a) of the Exchange Act.

4. While touting the fairness of the Merger Consideration to the Company's shareholders in the S-4, Defendants have failed to disclose certain material information that is necessary for shareholders to properly assess the fairness of the Proposed Merger, thereby violating SEC rules and regulations and rendering certain statements in the S-4 materially incomplete and misleading.

5. In particular, the S-4 contains materially incomplete and misleading information concerning the financial projections for the Company that were prepared by the Company and relied on by Defendants in recommending that Versum shareholders vote in favor of the Proposed Merger. The financial projections were also utilized by Versum's financial advisor, Lazard Freres & Co., LLC ("Lazard"), in conducting certain valuation analyses in support of its fairness opinion.

6. It is imperative that the material information that has been omitted from the S-4 is disclosed prior to the forthcoming vote to allow the Company's shareholders to make an informed decision regarding the Proposed Merger.

7. Indeed, on February 27, 2019, Merk KGaA ("Merk") made an unsolicited proposal to acquire Versum for $48.00 in cash per Versum share, which exceeds the implied value of the Merger Consideration and the estimated Versum equity values determined by Lazard that formed the basis for its Fairness Opinion. While Defendants claim to be considering the Merk proposal, they continue to recommend the Proposed Merger to Versum shareholders.

8. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act, based on Defendants' violation of (i) Regulation G (17 C.F.R. § 244.100) and (ii) Rule 14a-9 (17 C.F.R. 240.14a-9). Plaintiff seeks to enjoin Defendants from holding the shareholders vote on the Proposed Merger and taking any steps to consummate the Proposed Merger unless, and until, the material information discussed below is disclosed to Versum shareholders sufficiently in advance of the vote on the Proposed Merger or, in the event the Proposed Merger is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act.

10. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

11. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Versum is incorporated in this District.

## PARTIES

12. Plaintiff is, and at all relevant times has been, a holder of Versum common stock.

13. Defendant Versum is incorporated in Delaware and maintains its principal executive offices at 8555 South River Parkway, Tempe, Arizona 85284. The Company's common stock trades on the NASDAQ under the ticker symbol "VSM."

14. Individual Defendant Guillermo Novo is Versum's President and Chief Executive Officer ("CEO") and has been a director of Versum at all relevant times.

15. Individual Defendant Alejandro D. Wolff has been a Director of Versum since October 1, 2016 and its Lead Director since May 24, 2017.

16. Individual Defendant Thomas J. Riordan has been a director of Versum since October 1, 2016.

17. Individual Defendant Seifollah Ghasemi has served as a director since September 29, 2016.

18. Individual Defendant Jacques Croisetière has served as a director since October 1, 2016.

19. Individual Defendant Susan C. Schnabel has at all relevant times served as a director of Versum.

20. Individual Defendant Dr. Yi Hyon Paik has at all relevant times served as a director of Versum.

21. The Individual Defendants referred to in paragraphs 14-20 are collectively referred to herein as the "Individual Defendants" and/or the "Board."

## CLASS ACTION ALLEGATIONS

22. Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public shareholders of Versum (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

23. This action is properly maintainable as a class action because:

a. The Class is so numerous that joinder of all members is impracticable. As of February 7, 2019, there were approximately 109,110,421 million shares of Versum common stock outstanding, held by hundreds of individuals and entities scattered throughout the country. The actual number of public shareholders of Versum will be ascertained through discovery;

b. There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

i) whether Defendants disclosed material information that includes non-GAAP financial measures without providing a reconciliation of the same non-GAAP financial measures to their most directly comparable GAAP equivalent in violation of Section 14(a) of the Exchange Act;

ii) whether Defendants have misrepresented or omitted material information concerning the Proposed Merger in the S-4 in violation of Section 14(a) of the Exchange Act;

iii) whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

iv) whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to vote their shares regarding the Proposed Merger based on the materially incomplete and misleading S-4.

c. Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

d. Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

f. Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

g. A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## SUBSTANTIVE ALLEGATIONS

### I. The Proposed Merger

24. Versum develops, manufactures, transports, and handles specialty materials for the semiconductor and display industries. The company operates through two segments, (1) Materials and (2) Delivery Systems and Services (DS&S). The Materials segment provides specialty chemicals and materials used in semiconductors, as well as specialty gases used in the semiconductor manufacturing process, including high purity process materials for deposition, metallization, chamber cleaning, and etching; chemical mechanical planarization slurries; organosilanes; organometallics and liquid dopants for thin film deposition; and formulated chemical products for post-etch cleaning primarily for the manufacture of silicon and compound semiconductors, and thin film transistor liquid crystal displays. The DS&S segment develops, designs, manufactures, and sells bulk gas, specialty gas, and specialty chemical cabinets and systems, which are used to manage the delivery of key materials into the semiconductor manufacturing process, and flow and temperature control systems and analytical systems to capture data. It is also involved in the project management for installation and startup of the gas and chemical delivery systems, and inventory management, and provision of spare parts, equipment upgrades, equipment maintenance, and training services.

25. On January 28, 2019, Versum and Entegris issued a joint press release announcing the Proposed Merger, which states in pertinent part:

> BILLERICA, Mass. & TEMPE, Ariz.--(BUSINESS WIRE)--Entegris, Inc. (NASDAQ:ENTG), a leader in specialty chemicals and advanced materials solutions for the microelectronics industry, and Versum Materials, Inc. (NYSE:VSM), a leading specialty materials supplier to the semiconductor industry, today announced that they have agreed to combine in a merger of equals. The combined company will be a premier specialty materials company for the semiconductor and other high-tech industries.

Under the terms of the agreement, which was unanimously approved by the Boards of Directors of both companies, Versum Materials stockholders will receive 1.120 shares of Entegris for each existing Versum Materials share. Upon completion of the merger, Entegris stockholders will own 52.5 percent and Versum Materials stockholders will own 47.5 percent of the combined company[1]. The combined company will have a pro forma enterprise value of approximately $9 billion, based on the closing prices of Entegris and Versum Materials on January 25, 2019, and approximately $3 billion in revenue and approximately $1 billion in Adjusted EBITDA on a pro forma basis for calendar year 2018[2].

The combined company will retain the Entegris name and will be headquartered in Billerica, Massachusetts, and will maintain a strong operational presence in Tempe, Arizona.

Upon closing of the transaction, Entegris CEO Bertrand Loy will serve as Chief Executive Officer, Entegris CFO Greg Graves will serve as Chief Financial Officer, and Versum Materials General Counsel Michael Valente will serve as General Counsel of the combined company, supported by a highly experienced and proven leadership team that reflects the strengths and capabilities of both companies.

The combined company's Board of Directors will have nine members, consisting of four directors from the existing Versum Materials board, including Seifi Ghasemi, Chairman of the Versum Materials Board, who will serve as Chairman of the Board of the combined company, and five directors from the existing Entegris Board, including Bertrand Loy.

Entegris President and Chief Executive Officer, Bertrand Loy said, "We are excited to combine with Versum Materials to create a premier specialty materials company for the semiconductor and other high-tech industries. The combined company will be ideally positioned to more effectively help our customers achieve higher yields and new levels of performance and reliability, and together, we will be well positioned to take advantage of long-term secular semiconductor growth, and to tackle new industry process challenges. I have great respect for the Versum Materials team and look forward to joining forces as we embark on this next chapter and create new value for our stockholders, employees and customers."

Versum Materials President and Chief Executive Officer, Guillermo Novo said, "We could not ask for a better partner in Entegris. This merger will create greater benefits and growth opportunities than either company could have achieved on its own. It dramatically accelerates our goal of portfolio diversification – creating an end-to-end materials solutions provider across the entire semiconductor manufacturing process. With enhanced global scale and world class technical expertise, we'll be poised to drive further innovation and support investments across our technology, infrastructure, and additional capabilities – enabling us both

to better serve our customers and provide expanded opportunities for our employees.

**Compelling Strategic and Financial Benefits of the Merger**

- **Enhanced product breadth and depth:** Entegris and Versum Materials have highly complementary portfolios that combined will bring customers enhanced technical capabilities. This merger will create the world's first comprehensive and effective end-to-end materials solutions provider across the entire semiconductor manufacturing process. The combined company is expected to have a full suite of diversified product offerings including Advanced Materials, Specialty Gases, Microcontamination Control, Advanced Materials Handling, and Delivery Systems and Services.
- **World class technology**: The combined company's world class technology and R&D capabilities will better enable it to:
  - Address customers' evolving needs for new materials as device architectures become more complex;
  - Capitalize on the increasing demand for purity and help drive improved yield; and
  - Accelerate the development and time to market of new technologies that align with the industry technology roadmap.
- **Global scale and operational excellence:** A much broader, global scale will enable the combined company to reach additional customer touch points, and have increased relevance in key geographies. By combining its extensive global manufacturing network, the company will be able to improve delivery times and drive new levels of operational efficiencies and excellence.
- **Increased financial strength and flexibility:** The combined company will have approximately $3 billion in revenue and approximately $1 billion in Adjusted EBITDA on a pro forma basis for calendar year 2018[3]. It will be well capitalized with a strong balance sheet and a pro forma net leverage ratio of 1.1x[4]. In addition, it will have flexibility to invest, make acquisitions, and return capital to stockholders, while enjoying greater earnings stability and margin growth potential.
- **Significant stockholder value creation:** The combination is expected to generate more than $75 million of annual cost synergies in manufacturing, logistics, procurement and SG&A rationalization within 12 months post close. In addition, the combined company is expected to realize significant revenue growth synergies from cross-selling opportunities, with further potential upside from capex and revenue synergies.

26. The Merger Consideration appears inadequate in light of the Company's recent financial performance and prospects for future growth. Indeed, the Merger Consideration is

estimated at a cash equivalent of $35.08 per Versum share, which is only an approximately 11% premium to the Company's closing stock price the day before the announcement. As mentioned, the German company Merk, on February 28, 2019, announced an unsolicited proposal to acquire Versum at $48.00 per share, which represents a 52% premium of the Company's share price.

27. Merk has explained its rationale for making the offer on a conference call:

> The enterprise value is EUR 5.3 billion and the offer is all cash. This values Versum Materials on a 2019 enterprise value EBITDA multiple based on latest consensus estimates of 12.6x.
>
> And if we include the full run rate of our expected synergies, this translates into a pro forma enterprise value EBITDA multiple of 11x.
>
> ************************************************************
>
> Due to the Versum's above-average profitability, we estimate that our EBITDA pre margin would expand by some 60 basis points already in the first full year after the expected closing. With this sizable earnings contribution and the identified synergies, I will come to these in a second, the proposed acquisition could be immediately EPF pre-accretive.
>
> If you look at an earnings per share all-in, that means including integration and transaction costs, our estimate is that the transaction could be accretive by year 3. The transaction also meets our third criteria to earn our cost of capital.
>
> From a leverage perspective, we expect net-debt-to-EBITDA pre to rise to 2.9x on day 1, visibly below the level we had seen right after our acquisition of Sigma-Aldrich.[1]

28. In sum, it appears that Versum is well-positioned for financial growth and, as evidenced by the Merk proposal, the Merger Consideration fails to adequately compensate the Company's shareholders. It is imperative that Defendants disclose the material information they have omitted from the S-4, discussed in detail below, so that the Company's shareholders can

[1] *See* www.sec.gov/Archives/edgar/data/1660690/000114420419011359/tv515017_dfan14a.htm (last visited Mar. 1, 2019).

properly assess the fairness of the Merger Consideration for themselves and make an informed decision concerning whether or not to vote in favor of the Proposed Merger.

## II. The Materially Incomplete and Misleading S-4

29. On February 28, 2019, Defendants caused the S-4 to be filed with the SEC in connection with the Proposed Merger. The S-4 solicits the Company's shareholders to vote in favor of the Proposed Merger. Defendants were obligated to carefully review the S-4 before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the S-4 misrepresents and/or omits material information that is necessary for the Company's shareholders to make an informed decision concerning whether to vote in favor of the Proposed Merger, in violation of Sections 14(a) and 20(a) of the Exchange Act.

### *Financial Projections that Violate Regulation G and SEC Rule 14a-9*

30. The S-4 fails to provide material information concerning the Company's financial projections, which were developed by the Company's management and relied upon by the Board in recommending that the shareholders vote in favor of the Proposed Merger. S-4 87-88. These financial projections were also relied upon by the Company's financial advisor, Lazard, in rendering its fairness opinion. *Id.* at 105, 114.

31. Specifically, the S-4 provides values for projected non-GAAP (Generally Accepted Accounting Principles) financial metrics from 2019, 2020, and 2021 for: (1) Adjusted EBITDA and (2) Adjusted EBIT, but fails to provide the (i) line items used to calculate these non-GAAP metrics nor (ii) a reconciliation of these non-GAAP projections to the most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a). *Id.* at 114.

32. The Company defines "Adjusted EBITDA" as a non-GAAP term as "net income excluding certain disclosed items which Versum does not believe to be indicative of underlying

business trends, including interest expense, the write-off of financing costs, non-service components of net periodic pension cost, income tax provision, depreciation and amortization expense, non-controlling interests, and business separation, restructuring and cost reduction actions." *Id.* at 114 n.1. However, the S-4 fails to provide the values of any of these line items and fails to reconcile Adjusted EBITDA to its most comparable GAAP equivalent. *Id.* at 114. This omitted information is material because it was used to calculate and project critical projected financial measures utilized by the Board and Lazard to recommend the unfair Merger Consideration, and its omission renders the Board's recommendation, the projected financials, Lazard's valuations and the Merger Consideration misleading.

33. Similarly, "Adjusted EBIT" is described as a non-GAAP term defined as: "net income excluding certain disclosed items which Versum does not believe to be indicative of underlying business trends, including interest expense, the write-off of financing costs, non-service components of net periodic pension cost, income tax provision, non-controlling interests, and business separation, restructuring and cost reduction actions." *Id.* at 114 n.2. Nevertheless, the Company again fails to provide the values of any of these line items, even though the S-4 claims they are "disclosed[,]" and fails to reconcile Adjusted EBIT to its most comparable GAAP equivalent. *Id.* at 114. This omitted information is material because it was used to calculate and project critical projected financial measures utilized by the Board and Lazard to recommend the unfair Merger Consideration, and its omission renders the Board's recommendation, the projected financials, Lazard's valuations and the Merger Consideration misleading

34. The omission of these projected non-GAAP metrics additionally renders the S-4 misleading because Lazard relied on and utilized these management projections to extrapolate these metrics further to 2022 and 2023. *Id.* at 109.

35. The Company explains its lack of reconciliation to comparable GAAP measures, stating:

> due to no reasonably accessible or reliable comparable GAAP measures for these measures and the inherent difficulty in forecasting and quantifying the measures that are necessary for such reconciliation**.**

*Id.* at, 111.

36. But this is misleading because the S-4 clearly states that the starting point for calculating these projected non-GAAP measures was Net Income, a GAAP measure.

37. When a company discloses non-GAAP financial measures in a registration statement that were relied on by a board of directors to recommend that shareholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

38. Indeed, the SEC has increased its scrutiny of the use of non-GAAP financial measures in communications with shareholders. Former SEC Chairwoman Mary Jo White has stated that the frequent use by publicly traded companies of unique company-specific non-GAAP financial measures (as Versum included in the S-4 here), implicates the centerpiece of the SEC's disclosures regime:

> In too many cases, the non-GAAP information, which is meant to supplement the GAAP information, has become the key message to investors, crowding out and effectively supplanting the GAAP presentation. Jim Schnurr, our Chief Accountant, Mark Kronforst, our Chief Accountant in the Division of Corporation Finance and I, along with other members of the staff, have spoken out frequently about our concerns to raise the awareness of boards, management and investors.

> And last month, the staff issued guidance addressing a number of troublesome practices *which can make non-GAAP disclosures misleading*: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures. I also urge again, as I did last December, that appropriate controls be considered and that audit committees carefully oversee their company's use of non-GAAP measures and disclosures.[2]

39. The S-4 explicitly discloses that the Board relied on the non-GAAP financial projections in making its recommendation because it states the Board considered the following:

- the expectation that the combined company will generate more than $75 million of annual cost synergies in manufacturing, logistics, procurement and selling, general and administrative expense rationalization within 12 months following the closing of the merger;

- the expectation that the combined company will be well-capitalized with a strong balance sheet, a pro forma net leverage ratio of approximately 1.1x Adjusted EBITDA (inclusive of annualized cost synergies) and an estimated $3 billion in revenue;

- the fact that the exchange ratio, based on the closing price of the Versum common stock and the Entegris common stock as of January 25, 2019, the last trading day prior to the announcement of the merger agreement, represented an implied premium of approximately 10.8% to the closing price of the Versum common stock on January 25, 2019;

- the historical and projected financial information concerning Versum's business, financial performance and condition, results of operations, earnings, competitive position and prospects as a stand-alone company

S-4 87-88.

40. Thus, in order to bring the S-4 into compliance with Regulation G as well as cure the materially misleading nature of the projections under SEC Rule 14a-9 as a result of the omitted

---

[2] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (emphasis added) (last visited Mar. 1, 2019).

information, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures and/or disclose the line item projections for the financial metrics that were used to calculate the aforementioned non-GAAP measures. Such projections are necessary to make the non-GAAP projections included in the S-4 not misleading. Indeed, Defendants caution Versum shareholders regarding the information contained in the financial projections, which incorporate non-GAAP financial metrics. Specifically, Defendants disclosed the following:

> Versum management regularly uses a variety of financial measures that are not in accordance with GAAP, including Adjusted EBITDA (defined as net income excluding certain items which Versum does not believe to be indicative of underlying business trends, including interest expense, the write-off of financing costs, non-service components of net periodic pension cost, income tax provision, depreciation and amortization expense, non-controlling interests, and business separation, restructuring and cost reduction actions) for forecasting, budgeting and measuring operating performance. The non-GAAP financial measures are not meant to be considered in isolation or as a substitute for comparable GAAP measures. While Versum believes that these non-GAAP financial measures provide meaningful information to help investors understand the operating results and to analyze Versum's financial and business trends on a period-to-period basis, there are limitations associated with the use of these non-GAAP financial measures. These non-GAAP financial measures are not prepared in accordance with GAAP, are not reported by all of Versum's competitors (including Entegris) and may not be directly comparable to similarly titled measures of Versum's competitors due to potential differences in the exact method of calculation.

*Id.* at 113-14.

***The Materially Misleading Financial Analyses***

41. The financial projections at issue were relied upon by the Company's financial advisor, Lazard, in connection with its valuation analyses and respective fairness opinions. *Id.* at 86. The opacity concerning the Company's internal projections renders the valuation analyses described below materially incomplete and misleading, particularly as companies formulate non-

GAAP metrics differently. Once a registration statement discloses internal projections relied upon by the Board, those projections must be complete and accurate.

42. With respect to Lazard's *Discounted Cash Flow Analysis*, the S-4 states that Lazard calculated ". . . the estimated present value of the standalone unlevered, after-tax free cash flows that Versum projected to generate through 2023 based on the projections provided by Versum management and extrapolated by Lazard based on discussions with, and guidance from, Versum management and approved for Lazard's use by Versum management." *Id.* at 105. Despite disclosing that the unlevered after-tax free cash flow projections were based on the Company's financial projections, the S-4 fails to disclose the actual unlevered after-tax free cash flow or the values of the line items utilized to calculate unlevered after-tax free cash flow. The absence of this information renders Lazard's discounted cash flow analyses incomplete and misleading.

43. Lazard additionally used a perpetual growth rate range of 1.5% to 2.5%, a discount rate of 9.5% to 10.5% which ranges were based on Lazard's judgement of estimated range of weighted average cost of capital based on three companies, Cabot Microelectronics, Entegris and Versum, which yielded equity value ranges of $35.05 to $45.40. *Id.* at 105.

44. The definition of projected after-tax unlevered free cash flow is, in and of itself, and separate and apart from the mandates of Regulation G, materially false and/or misleading in violation of SEC Rule 14a-9 (17 C.F.R. 240.14a-9). Because neither the method nor the line items used to calculate projected after-tax UFCF were disclosed, shareholders are unable to discern the veracity of Lazard's illustrative discounted cash flow analyses. Without further disclosure, shareholders are unable to compare Lazard's calculations with the Company's financial projections. Thus, the Company's shareholders are being materially misled regarding the value of the Company.

45. These key inputs are material to Versum shareholders, and their omission renders the summary of Lazard's discounted cash flow analyses incomplete and misleading. As a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions, in a discounted cash flow analysis a banker takes management's projections and then makes several key choices "each of which can significantly affect the final valuation." Steven M. Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1576 (2006). Such choices include "the appropriate discount rate, and the terminal value . . . " *Id.* As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value . . . The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness. This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions[.]

*Id.* at 1577-78 (footnotes omitted).

46. These omissions from the *Discounted Cash Flow Analysis* are all the more misleading because the equity value ranges Lazard calculated fall below the Merger Consideration and the Merk proposal. The omitted information is material and must be disclosed to shareholders.

47. In sum, the S-4 independently violates both (i) Regulation G, which requires a presentation and reconciliation of any non-GAAP financial to their most directly comparable GAAP equivalent, and (ii) Rule 14a-9, since the material omitted information renders certain statements, discussed above, materially incomplete and misleading. As the S-4 independently contravenes the SEC rules and regulations, Defendants violated Section 14(a) and Section 20(a) of the Exchange Act by filing the S-4 to garner votes in support of the Proposed Merger from Versum shareholders.

48. Absent disclosure of the foregoing material information prior to the special shareholder meeting to vote on the Proposed Merger, Plaintiff and the other members of the Class

will not be able to make a fully-informed decision regarding whether to vote in favor of the Proposed Merger, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

**COUNT I**

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and 17 C.F.R. § 244.100 Promulgated Thereunder)**

49. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

50. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

51. As set forth above, the S-4 omits information required by SEC Regulation G, 17 C.F.R. § 244.100, which independently violates Section 14(a). SEC Regulation G, among other things, requires an issuer that chooses to disclose a non-GAAP measure to provide a presentation of the "most directly comparable" GAAP measure and a reconciliation "by schedule or other clearly understandable method" of the non-GAAP measure to the "most directly comparable" GAAP measure. 17 C.F.R. § 244.100(a).

52. The failure to reconcile the numerous non-GAAP financial measures included in the S-4 violates Regulation G and constitutes a violation of Section 14(a).

**COUNT II**

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder)**

53. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

54. SEC Rule 14a-9 prohibits the solicitation of shareholder votes in registration statements that contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading[.]" 17 C.F.R. § 240.14a-9(a).

55. Regulation G similarly prohibits the solicitation of shareholder votes by "mak[ing] public a non-GAAP financial measure that, taken together with the information accompanying that measure . . . contains an untrue statement of a material fact or *omits to state a material fact necessary in order to make the presentation of the non-GAAP financial measure . . . not misleading*." 17 C.F.R. § 244.100(b) (emphasis added).

56. Defendants have issued the S-4 with the intention of soliciting shareholder support for the Proposed Merger. Each of the Defendants reviewed and authorized the dissemination of the S-4, which fails to provide critical information regarding, amongst other things, the financial projections for the Company.

57. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as directors and/or officers, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were

misstated or omitted from the S-4, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

58. The Individual Defendants knew or were negligent in not knowing that the S-4 is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Merger.

59. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the S-4, rendering the sections of the S-4 identified above to be materially incomplete and misleading.

60. The Individual Defendants were, at the very least, negligent in preparing and reviewing the S-4. The preparation of a registration statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the S-4 or failing to notice the material omissions in the S-4 upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

61. Versum is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the S-4.

62. The misrepresentations and omissions in the S-4 are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Merger.

## COUNT III

**(Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)**

63. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

64. The Individual Defendants acted as controlling persons of Versum within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors and/or officers of Versum, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the S-4 filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

65. Each of the Individual Defendants was provided with or had unlimited access to copies of the S-4 and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

66. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein and exercised the same. The S-4 at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Merger. They were thus directly involved in preparing the S-4.

67. In addition, as the S-4 sets forth at length, and as described herein, the Individual

Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The S-4 purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

68. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

69. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B. Enjoining Defendants and all persons acting in concert with them from proceeding with the shareholder vote on the Proposed Merger or consummating the Proposed Merger, unless and until the Company discloses the material information discussed above which has been omitted from the S-4;

C. Directing the Defendants to account to Plaintiff and the Class for all damages sustained as a result of their wrongdoing and to award damages arising from proceeding with the Proposed Merger;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable

attorneys' and expert fees and expenses;

E. Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: March 1, 2019

Respectfully submitted,

**FARUQI & FARUQI, LLP**

By: */s/ Michael Van Gorder*
Michael Van Gorder (#6214)
3828 Kennett Pike, Suite 201
Wilmington, DE 19807
Tel.: (302) 482-3182
Email: mvangorder@faruqilaw.com

*Counsel for Plaintiff*

**OF COUNSEL:**

**FARUQI & FARUQI, LLP**
Nadeem Faruqi
James M. Wilson, Jr.
685 Third Ave., 26th Fl.
New York, NY 10017
Tel.: (212) 983-9330
Email: nfaruqi@faruqilaw.com
Email: jwilson@faruqilaw.com

*Counsel for Plaintiff*